UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-24172-CIV-LENARD/ELFENBEIN

**SANTIAGO PAULINO,**

    Plaintiff,

v.

**WESTERN FUNDING II Inc.** *et. al.***,**

    Defendants.

_____/

## ORDER DENYING JOINT MOTION FOR JUDGMENT ON THE PLEADINGS

**THIS CAUSE** is before the Court on the Joint Motion for Judgment on the Pleadings ("Motion," D.E. 63) filed by consumer reporting agency ("CRA") Defendants Equifax Information Services, LLC ("Equifax"), Experian Information Solutions, Inc. ("Experian"), and Trans Union LLC ("Trans Union") (collectively, the "CRA Defendants") on May 3, 2024.[1] Plaintiff filed a Response ("Response," D.E. 69) on May 15, 2024. The CRA Defendants did not file a Reply and the time to do so has passed. Upon review of the Motion, Response, and the record, the Court finds as follows.

---

[1] Since the Motion was filed, Plaintiff and Trans Union reached a settlement, and the case was dismissed without prejudice as to Trans Union only. (*See* D.E.'s 73, 74.) As such, the "CRA Defendants" now refers collectively to Equifax and Experian.

I.  **Background**[2]

This action involves an identity theft victim who seeks to hold his loan furnisher and several CRA's accountable for allegedly failing to investigate and block a fraudulently obtained auto loan from his credit reports. (*See generally*, Am. Compl.). Plaintiff alleges his loan furnisher, Defendant Western Funding II Inc. ("Western Funding," or the "Loan Furnisher") failed to conduct an adequate investigation regarding Plaintiff's claim of identity theft. As to the CRA Defendants, Plaintiff alleges violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq*. ("FCRA") for including in his credit reports an auto loan that was the product of identity theft, and failing to block this information after he made a legally sufficient report.

On November 8, 2022, Plaintiff went to Odatt Auto Center to try to refinance his existing auto loan. (*Id.* ¶ 69.) Plaintiff was offered a new loan, but he did not find the terms acceptable and so he cancelled the transaction. (*Id.*) Plaintiff continued to make payments on his existing auto loan (the "Legitimate Loan"). (*Id.* ¶ 70.)

Plaintiff later checked his credit report and discovered that on November 8, 2022, someone opened a new auto loan account in his name with Western Funding (the "Disputed Loan") with an opening balance of $16,970. (*Id.* ¶ 72.) Plaintiff was confused because he only had one auto loan, the Legitimate Loan. (*Id.* ¶ 73.) However, his credit report included both the Disputed and Legitimate Loans. (*Id.* ¶¶ 73–75.)

---

[2] The following facts are gleaned from Plaintiff's Amended Complaint (D.E. 48) and are deemed to be true for purposes of ruling on the Motion.

Plaintiff noticed that the Disputed Loan included an address where he has never lived nor been associated with and an incorrect Social Security Number ("SSN"). (*Id.* ¶¶ 75–76.) The SSN differed from his own only by its last digit. (*Id.*)

Plaintiff called Western Funding twice in December 2022 regarding the Disputed Loan. (*Id.* ¶¶ 77–78.) In both calls, Western Funding confirmed that the Legitimate Loan was the sole auto loan associated with his SSN. (*Id.* ¶¶ 77–78.) On January 2, 2023, Plaintiff again called Western Funding. (*Id.* ¶¶ 79–80.) This time, Plaintiff inquired as to the Disputed Loan listed under the incorrect SSN. (*Id.*) The representative stated that the Disputed Loan was 30 days late with an unpaid balance of $516.90. (*Id.*)

On January 13, 2023, Plaintiff completed an identity theft report on a form issued by the Federal Trade Commission (the "FTC Report," D.E. 63-1 at 5)[3] (*Id.* ¶¶ 81–83.) The FTC Report includes Plaintiff's name, address, phone number, and email; however, Plaintiff did not provide a SSN. (*See id.*) The FTC Report further includes Plaintiff's summary of the circumstances surrounding his refinancing inquiry on November 8, 2022, and of his discovery of the Disputed Loan on his credit report. (*See id.*) The FTC Report was signed by Plaintiff under penalty of perjury. (*See id.*)

---

[3] The CRA Defendants attached the FTC Report to the Motion.

Plaintiff also sent letters to each CRA disputing the reporting of the Fraudulent Account. (Am. Compl. ¶¶ 82–84.) Plaintiff specifically asked each CRA to block the Disputed Loan from its files and credit reports. (*Id.* ¶ 85.)

Equifax responded to Plaintiff's dispute by sending an "automated consumer dispute verification" ("ACDV") to Western Funding. (*Id.* ¶ 86–99.) An ACDV is an entirely automated process in which the computer systems of a CRA communicate with the computer systems of a furnisher of consumer information, like Western Funding, to determine whether the data in the CRA's computer system matches the data in the furnisher's information. (*Id.* ¶¶ 59–68.) Following the ACDV, Equifax determined that the Disputed Loan belonged to Plaintiff and declined to change its reporting or block the Disputed Account. (*Id.*¶¶ 86–99.) Equifax made this determination despite its knowledge that the SSN used on the Disputed Loan did not match Plaintiff's actual SSN. (*Id.* ¶ 98.)

Experian refused to investigate Plaintiff's dispute because it would not acknowledge the authenticity of Plaintiff's letters. (*Id.*¶¶ 100–116.) As such, Experian did not change its reporting or block the Disputed Account. (*Id.*)

Plaintiff thereafter filed a report ("Police Report," D.E. 63-1 at 39–41)[4] with the City of Miami Police Department concerning the identity fraud. (Am. Compl. ¶¶ 131–133.) Plaintiff included the Police Report with his second round of dispute letters sent

---

[4] The CRA Defendants attached the Police Report to the Motion.

to the CRA Defendants. (*Id.* ¶¶ 134–39.) In response, Equifax removed the incorrect address from his file but made no other corrections, while Experian again disputed the authenticity of Plaintiff's correspondence and declined to correct or block the reporting of the Disputed Loan. (*Id.* ¶¶ 140–74.)

On February 23, 2024, Plaintiff filed the operative Amended Complaint asserting the following causes of action against the CRA Defendants:

- Count I: Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy under 15 U.S.C. § 1681e(b), (*id.* ¶¶ 260–69);

- Count II: Failure to Perform a Reasonable Reinvestigation under 15 U.S.C. § 1681i, (*id.* ¶¶ 270–83); and

- Count III: Failure to Block Identity Theft Information under 15 U.S.C. § 1681c-2, (*id.* ¶¶ 284–91.)

Plaintiff also filed the following two counts solely against his Loan Furnisher, Western Funding:

- Count IV: Failure to Conduct an Investigation of the Disputed Information and Review of all Relevant Information Provided by the Consumer under 15 U.S.C. §1681s-2(b), (*id.* ¶¶ 292–98); and

- Count V: Violation of the Florida Consumer Collection Practices Act under Fla. Stat. § 559.55, (*id.* ¶¶ 299–309.)

On March 8, 2024, Western Funding filed an Answer and Counterclaim (D.E. 51 at 26–30) asserting the following causes of action against Plaintiff:

5

- Count I: Breach of contract for failure to remit payments due under the auto loan for February 20, 2023, and all payments due thereafter, (*id.* ¶¶ 19–22); and

- Count II: Replevin to recover possession of the vehicle, (*id.* ¶¶ 23–30.)

In the instant Motion, the CRA Defendants move for dismissal of the Amended Complaint arguing that (1): the validity of the contract is a legal dispute between Plaintiff and a loan furnisher that does not give rise to liability under the FCRA, and (2): Plaintiff failed to plead the necessary elements for a blocking of information claim under § 1681c-2. (Mot. at 5–13.)  In his Response, Plaintiff asserts that (1): his claims involve a factual, rather than legal dispute as they hinge on objectively verifiable facts — specifically, whether the Disputed Loan account was opened by Plaintiff or someone using his identity without permission, and (2): the pleadings and attached documents set forth a plausible cause of action under § 1681c-2. (Resp. at 7–18.)

## II.     Legal Standards

Pursuant to Federal Rule of Civil Procedure 12(c): "After the pleadings are closed--but early enough not to delay trial--a party may move for judgment on the pleadings."  Judgment on the pleadings is appropriate when no issues of material fact exist, and the movant is entitled to judgment as a matter of law. *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1335 (11th Cir. 2014).  A court accepts the facts in the complaint as true and views them in the light most favorable to the nonmoving party. *Id.*  A motion for judgment on the pleadings is governed by the same standard as a motion to dismiss under Rule 12(b)(6). *Carbone v. Cable News Network*, Inc., 910 F.3d 1345, 1350 (11th

Cir. 2018) (citing *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998)). To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## III. Discussion

### a. Counts I & II

The CRA Defendants' first argument is that "legal disputes between a consumer and a furnisher do not give rise to liability under the FCRA." (Mot. at 5.) The CRA Defendants, however, fail to specify to which Count its argument pertains. (*See id.* at 5–9.) Nevertheless, they cite cases "dismissing FCRA claims under 15 U.S.C. §§ 1681e(b) and 1681i for failure to state a claim[.]" (*Id.* at 7 (citing *Perry v. Toyota Motor Credit Corp.,* 2019 WL 332813, at *5 (W.D. Va. Jan. 25, 2019)). As Counts I and II allege violations of §§ 1681e(b) and 1681i respectively, the Court construes the CRA Defendants' argument as pertaining to those two Counts.[5]

For Count I, to state a claim for a violation of FCRA section 1681e(b) a plaintiff must allege: "(1) the CRA published an inaccurate consumer report to a third party; (2) in publishing its consumer report, the CRA failed to follow reasonable procedures to ensure the maximum possible accuracy of the consumer report; and (3) the plaintiff

---

[5] Because much of the analysis overlaps, the Court addresses Counts I & II together.

7

suffered actual damages as a result of the CRA's failure to follow reasonable procedures." *Lazarre v. JPMorgan Chase Bank, N.A.*, 780 F. Supp. 2d 1320, 1328 (S.D. Fla. 2011) (Altonaga, J.) (citations omitted).

The Court first finds, and the CRA Defendants do not dispute, that Plaintiff has plausibly alleged that the CRA Defendants published consumer reports with his information to third parties and that he suffered actual damages as a result. (Am. Compl. ¶¶ 260–69.) The dispute lies in whether the consumer reports were "inaccurate" and whether the CRA Defendants failed to follow reasonable procedures to ensure "maximum possible accuracy." The CRA Defendants claim that such reasonable procedures were followed, and the information reported was not "inaccurate" as it stemmed from an unresolved contractual dispute between Plaintiff and his Loan Furnisher without a straightforward answer. (Mot. at 6–8.)

For Count II, to state a claim for a violation of FCRA section 1681i(a) a plaintiff must allege: "(1) the [consumer report in dispute] contains inaccurate or incomplete information; (2) the [plaintiff] notified the [CRA] of the alleged inaccuracy; (3) the dispute is not frivolous or irrelevant; (4) the [CRA] failed to respond or conduct a reasonable reinvestigation of the disputed items; [and] (5) the failure to reinvestigate caused the [plaintiff] to suffer out-of-pocket losses or intangible damages such as humiliation or mental distress." *Lazarre*, 780 F. Supp. 2d at 1329 (alterations adopted; citations omitted).

The Court first finds, and the CRA Defendants do not dispute, that Plaintiff has plausibly alleged that he provided notice of the alleged inaccuracy, that the dispute is not frivolous or irrelevant, and that damages were incurred as a result. (Am. Compl. ¶¶ 270–82.) The dispute again lies in whether the consumer reports were "inaccurate" and whether the CRA Defendants failed to respond or conduct a "reasonable reinvestigation." The CRA Defendants claim that their reinvestigation was reasonable, and the information reported was not "inaccurate" as it stemmed from a contractual dispute between Plaintiff and his Loan Furnisher without a straightforward answer. (Mot. at 6–8.)

The FCRA provides that a credit reporting agency preparing a consumer report must "follow reasonable procedures to assure the maximum possible accuracy of the information relating to the person about whom the report relates." 15 U.S.C. § 1681e(b). To comply with the FCRA's "maximum possible accuracy" standard, "a report must be both factually correct and free from potential for misunderstanding." *Erickson v. First Advantage Background Servs. Corp.*, 981 F.3d 1246, 1248 (11th Cir. 2020). "Whether the alleged inaccuracy is factual or legal is beside the point. Instead, what matters is whether the alleged inaccuracy was objectively and readily verifiable." *Holden v. Holiday Inn Club Vacations Inc.*, 98 F.4th 1359, 1363 (11th Cir. 2024).

In *Holden*, the plaintiffs alleged that a loan furnisher was inaccurately reporting the plaintiffs owed a debt on a standard-form timeshare agreement. *Id*. at 1363-65. The plaintiffs alleged they did not owe the debt because they had exercised their right to

9

cancel the agreement, which was created by a specific default provision.[6] *Id*. In ruling that the plaintiffs had not made an actionable allegation of inaccuracy under the FCRA, the Eleventh Circuit concluded that the "the alleged inaccurate information is not objectively and readily verifiable because it stems from a contractual dispute without a straightforward answer." *Id*. at 1368. Specifically, the Eleventh Circuit found that the legal consequences of the default provision had not been conclusively established, noting that "Florida state courts that have reviewed timeshare agreements—like the ones here—have come to conflicting conclusions about whether the default provisions excused a consumer's obligation to keep paying." *Id.* at 1368.

If a consumer disputes the completeness or accuracy of any information contained in her file and she notifies the credit reporting agency of the dispute, the agency must "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate[.]" 15 U.S.C. § 1681i(a)(1)(A). To establish a violation of either FCRA provision, §§ 1681e(b) or 1681i, "the consumer must present evidence tending to show that the agency prepared a report containing inaccurate information." *Middlebrooks v. Equifax, Inc.*, No. 23-11086, 2024 WL 631000, at *6 (11th Cir. Feb. 15, 2024) (citing *Losch v. Nationstar Mortg. LLC*, 995 F.3d 937, 944 (11th Cir. 2021) (setting forth the elements of a prima facie violation of § 1681e); *Cahlin v. Gen. Motors*

---

[6] That provision stated, "[u]pon [Holden's] default or breach of any term or condition of this Agreement, all sums paid hereunder by [Holden] shall be retained by [Holiday] as liquidated damages, not as a penalty, and the parties hereto shall be relieved from all obligations hereunder." *Holden*, 98 F. 4th at 1364 (alterations adopted).

*Acceptance Corp.*, 936 F.2d 1151, 1160 (11th Cir. 1991) (setting forth the elements of a claim under § 1681i), *superseded by statute on other grounds as recognized in Santos v. Healthcare Revenue Recovery Grp., LLC.*, 90 F.4th 1144, 1156 (11th Cir. 2024). If a consumer fails to set forth facts supporting a plausible showing of an inaccuracy in a credit report, the consumer, as a matter of law, has not established a FCRA violation and the Court need not inquire further as to the reasonableness of the procedures adopted by the CRA. *Cahlin*, 936 F.2d at 1156.

Here, the CRA Defendants cite to *Holden* and submit that Plaintiff's challenge to the Disputed Loan involves an unresolved contractual dispute between Plaintiff and his Loan Furnisher. (*See* Mot. at 5–9.) They thus assert the claimed inaccuracy is not "objectively and readily verifiable," much like the default provision in *Holden*. *Holden*, 98 F.4th at 1368. The Court disagrees.

The CRA Defendants frame the issue as turning on the legal question of whether Plaintiff was liable for the debt created by the Disputed Loan. (Mot. at 5–9.) But the Eleventh Circuit in *Holden* caution that labeling the dispute as "factual or legal is beside the point. Instead, what matters is whether the alleged inaccuracy was objectively and readily verifiable." *Holden*, 98 F.4th at 1363. Here, the question of whether Plaintiff executed the Disputed Loan is objectively and readily verifiable — albeit, not at the pleadings stage. Ultimately, whether Plaintiff executed the Disputed Loan, is a factual question that will be answered in the affirmative or negative. Put differently, Plaintiff's

dispute with the CRA's boils down to whether he executed the Disputed Loan on November 8, 2022, or whether someone else did so without his authorization.

On this issue, the Court finds instructive the reasoning of the district court in *Solus v. Regions Bank*, No. 1:19-CV-2650-CC-JKL, 2020 WL 4048062, at *5 (N.D. Ga. July 17, 2020). In *Solus*, the plaintiff asserted a claim against a CRA under 15 U.S.C. § 1681i in connection with the CRAs' reporting about an auto loan. The plaintiff alleged that she had financed her car with a loan from Regions Bank and had always made timely payments. *Id*. at *1-2. When she brought her car in for repairs, the repair shop contacted Regions Bank, which repossessed the car. *Id*. at *2-3. Regions Bank then reported to CRAs that plaintiff had agreed to a voluntary repossession. *Id*. at *3-4. Plaintiff disputed this reporting with both the bank and the CRAs, but they continued to report the voluntary repossession. *Id*. Plaintiff claimed that the CRAs willfully violated § 1681i because they deliberately refused to consider any information outside of her credit file to determine the accuracy of Regions Bank's reporting. *Id*. at *4-5.

The CRA moved to dismiss the plaintiff's claim, contending that her alleged inaccuracy pertained to a legal dispute between the Plaintiff and Regions Bank arising from their contract relationship and that the FCRA did not require CRAs to resolve such issues in their reinvestigation of a consumer dispute. The district court rejected this argument, finding that:

> [The CRA] argues that Plaintiff's dispute more broadly concerned whether Regions Bank wrongfully repossessed the Nissan. Notably, whether Plaintiff voluntarily surrendered the Nissan and whether Regions

12

> Bank wrongfully repossessed the Nissan conceivably are two independent issues. It is possible that Plaintiff did not voluntarily surrender the Nissan and that Regions Bank did not wrongfully, involuntarily repossess the vehicle, if Regions Bank had a different legal justification for repossession. The wrongful repossession issue, in the context of this case, would turn on the resolution of legal issues that CRAs are not suited to reinvestigate or resolve. However, what Plaintiff disputed, as an initial matter, was the accuracy of the notation on her credit report that she had voluntarily surrendered the Nissan, and that plausibly is a factual dispute that [the CRA] should have reinvestigated in accordance with 15 U.S.C. § 1681i.

*Id.* at *5.

The Court agrees with Plaintiff that the reasoning in *Solous* is relevant and persuasive in the instant case. In that case, as here, there was a factual dispute concerning an auto loan. In *Solous*, the plaintiff claimed that she had not voluntarily surrendered her vehicle. Here, Plaintiff claims that he did not execute the Disputed Loan. The disputed information in both cases is, nevertheless, "objectively and readily verifiable." *Holden*, 98 F.4th at 1363. Unlike *Holden*, the disputed information does not turn on a contractual dispute without a straightforward answer. Ultimately, Plaintiff either did — or did not — execute the Disputed Loan. In other words, this case hinges on a matter of objectively verifiable fact. As such, it would be improper for the Court to resolve this case as a matter of law based upon the pleadings alone.

At this early stage, Plaintiff has plausibly alleged that he negotiated — but opted not to execute — the Disputed Loan on November 8, 2022. (Am. Compl. ¶ 69.) He alleges Western Funding and the CRAs reported facts showing that he had executed the Disputed Loan, although that account was associated with a SSN and personal

13

identifying information that differed from his own. (*Id.* ¶¶ 72-76.) In sum, the Court finds that Plaintiff has plausibly alleged that the CRA Defendants published "inaccurate" information sufficient to state a claim for relief in Counts I and II. The Court further finds that Plaintiff has plausibly alleged that the CRA Defendants failed to ensure "maximum possible accuracy" under § 1681e(b) (Count I) and failed to conduct a "reasonable reinvestigation" under § 1681i (Count II). The Motion is thus denied as to Counts I & II.

    **b.**    **Count III**

The CRA Defendants' second argument is that "Plaintiff fails to plead the necessary elements for a claim under section 1681c-2." (Mot. at 9.) The CRA Defendants again fail to specify to which Count the argument pertains; however, because Count III alleges a violation under 15 U.S.C. § 1681c-2, the Court construes the argument as pertaining to that Count.

Through section 1681c-2, the FCRA mandates that CRAs block information from their reports when, under certain conditions, the consumer identifies the information as resulting from identity theft. Section 1681c-2(a) requires that CRAs block identity theft information when four conditions have been met:

> [A] consumer reporting agency shall block the reporting of any information in the file of a consumer that the consumer identifies as information that resulted from an alleged identity theft, not later than 4 business days after the date of receipt by such agency of—
>
>     **(1)** appropriate proof of the identity of the consumer;

> **(2)** a copy of an identity theft report;
>
> **(3)** the identification of such information by the consumer; and
>
> **(4)** a statement by the consumer that the information is not information relating to any transaction by the consumer.

15 U.S.C. § 1681c-2(a).

The FCRA further defines the type of "identity theft report" described in section 1681c-2(a) as a report:

> **(A)** that alleges an identity theft;
>
> **(B)** that is a copy of an official, valid report filed by a consumer with an appropriate Federal, State, or local law enforcement agency, including the United States Postal Inspection Service, or such other government agency deemed appropriate by the Bureau; and
>
> **(C)** the filing of which subjects the person filing the report to criminal penalties relating to the filing of false information if, in fact, the information in the report is false.

15 U.S.C. § 1681a(q)(4).

The CRA Defendants argue that Plaintiff's FTC Report and Police Report "lacked sufficient information . . . to trigger the blocking requirement under § 1681c-2." (Mot. at 11.)[7] Put differently, the CRA Defendants assert that the reports fail to meet the FCRA's definition of "identity theft reports." The Court disagrees.

---

[7] As discussed, both reports are attached to the Motion. "A district court can generally consider exhibits attached to a complaint in ruling on a motion to dismiss . . . ." *Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016). Moreover, a court may consider a document attached to a Rule 12 motion without converting the motion into one for summary judgment "only if the attached document is: (1) central to the plaintiff's claim; and (2) undisputed." *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002) (citing *Harris v. Ivax Corp.*, 182 F.3d 799, 802 n.2 (11th Cir. 1999)). "'Undisputed' in this context means that the authenticity of the document is not challenged." *Id.*

15

First, as to the FTC Report, the CRA Defendants assert it "did not include information beyond [Plaintiff's] name, address, telephone number and email address[.]" (*Id.*) The CRA Defendants, however, fail to specify what further information is required. Moreover, the following explanation in Plaintiff's Response undercuts this unsubstantiated challenge:

> The Consumer Financial Protection Bureau ("CFPB") has promulgated regulations to help identify when an identity theft report is sufficiently "appropriate" to trigger the blocking requirement. As an initial matter, the CFPB has concluded that the standard form FTC Identity Theft Report is always appropriate to meet the requirements of § 1681c-2(a)(2). *See* 12 C.F.R. 1022.3(i)(3)(ii) ("The version of this form developed by the Federal Trade Commission, available on the FTC's Web site (ftc.gov/idtheft), remains valid and sufficient for this purpose.").

(Resp. at 15–16.)

The Court, having reviewed the FTC Report, finds that it was completed on the CFPB-approved form and provided all requested contact information. Specifically, Plaintiff provided his full name, address, phone number, and email. Plaintiff fully completed the entire FTC Report with one exception — he did not list a SSN in the section titled "Fraudulent Information on Credit Reports." Nevertheless, the CRA Defendants have cited no authority, and the Court is aware of none, invalidating the

---

(citations omitted). Here, the FTC Report and Police Report are clearly central to Plaintiff's claims, as they are the means by which he reported the identity theft pursuant to § 1681c-2(a)(2). Additionally, the Parties do not dispute the authenticity of these reports. (*See generally* Mot., Resp.).

FTC Report for failure to provide a SSN.[8] Finally, the CRA Defendants assert the FTC Report was not signed under penalty of perjury. (*See* Mot. at 11.) This is simply not true. The FTC Report is clearly e-signed by Plaintiff under the following statement:

> Under penalty of perjury, I declare this information is true and correct to the best of my knowledge.
>
> I understand that knowingly making any false statements to the government may violate federal, state, or local criminal statutes, and may result in a fine, imprisonment, or both.

(FTC Report, D.E. 63-1 at 5.)

Second, as to the Police Report, the CRA Defendants assert it "contained little to no information regarding the alleged identity theft[.]" (Mot. at 11.) However, the CRA Defendants again fail to specify what information is missing. As explained in Plaintiff's Response:

> [A]n identity theft report is appropriate when it contains "detailed information about the identity theft and the signature, badge number or other identification information of the individual law enforcement official taking the report." 12 C.F.R. 1022.3(i)(3)(i). Such a report "should be sufficient on its face to support a victim's request."

(Resp. at 16.)

---

[8] Only one case is cited in support of the CRA Defendants' claims in this section: *Huffman v. Experian Info. Sols., Inc.*, No. 19-CV-07408-JSW, 2021 WL 1561304, at *6 (N.D. Cal. Apr. 14, 2021). *Huffman* was decided upon summary judgment based on an assessment of the evidence rather than the pleadings alone. There, the adequacy of the plaintiff's identity theft report rested entirely on information in a Supplemental Police Report. *Id.* However, the undisputed evidence showed that the plaintiff never submitted the Supplemental Police Report to the CRA defendant, and so summary judgment was granted as to the plaintiff's blocking claim under § 1681c-2. *Id.* The Court finds *Huffman* inapposite as the facts and procedural posture differ markedly from the present case.

The Court, having reviewed the Police Report, finds that it specifically alleged identity theft involving the Disputed Loan. (*See* Police Report, D.E. 63-1 at 41 ("[T]he victim walked into the North Station front desk to report a fraud. The victim states that on the 8th of November of 2022 a Western Funding Inc account was opened underneath his name for $16,970.").) The Police Report further identifies the officer who took the report as well as the name and badge number of the investigator contacted regarding the alleged crime. (*See id.* at 39.) In sum, the Court finds that Plaintiff has plausibly established that the FTC Report and the Police Report qualify as "identity theft reports" under § 1681a(q)(4). Moreover, based on Plaintiff's allegations and the documents submitted by the CRA Defendants, Plaintiff has plausibly established that "a copy of an identity theft report" was provided to the CRA Defendants pursuant to § 1681c-2(a)(2).

The Court further finds — again, based on Plaintiff's allegations and the documents submitted by the CRA Defendants — that Plaintiff has plausibly established the remaining three conditions for the blocking requirement. Plaintiff alleges that he provided his identifying information in his dispute emails to the CRA Defendants. Additionally, the FTC Report includes Plaintiff's name, address, phone number, and email.[9] As such, Plaintiff has plausibly established that "appropriate proof of the identity of the consumer" was provided pursuant to § 1681c-2(a)(1). Finally, through

---

[9] Plaintiff also alleges that he provided a copy of his Social Security Card along with some of his dispute emails. The Court notes that the CRA Defendants attached Plaintiff's Social Security Card and Florida Temporary Driver License to the Motion. (*See* D.E. 63-1 at 43.)

18

the FTC Report, Police Report, and dispute emails, Plaintiff plausibly identifies the Disputed Loan as the subject of the alleged identity theft, and he states that the information is not related to any transaction made by him.  Plaintiff has thus plausibly established remaining conditions (3) and (4).  *See* 15 U.S.C. § 1681c-2(a)(1)–(4).  Consequently, the Motion is denied as to Count III.

### IV.   Conclusion

Accordingly, it is **ORDERED AND ADJUDGED** that the Joint Motion for Judgment on the Pleadings (D.E. 63) is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida this 13th day of June, 2024.

_____
**JOAN A. LENARD**
**UNITED STATES DISTRICT JUDGE**